| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

| | | |
|---|---|---|
| EARTHSNAP, INC. and ERIC RALLS, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 6:25-CV-238 |
| | § | APPEAL OF NO. 24-60363-JPS |
| PLANTSNAP, INC., and DEJ PARTNERS, | § | |
| LLC, | § | |
| | § | |
| Appellees. | § | |

**OPINION**

Pending before the court is Appellants Earthsnap, Inc. ("EarthSnap"), and Eric Ralls's ("Ralls") (collectively "Debtors") appeal from the bankruptcy court's Order Granting Motion to Convert Subchapter V, Chapter 11 Cases into Chapter 7 Bankruptcy Cases (#B-167) and its Order Denying Motion to Reconsider (#B-191). Having considered the record, the submissions of the parties, and the applicable law, the court is of the opinion that the bankruptcy court's orders should be AFFIRMED.

I.    Background

On June 17, 2024, EarthSnap filed a Voluntary Petition for Bankruptcy under Subchapter V, Chapter 11 of the Bankruptcy Code. (R. at 16). EarthSnap is a corporation that owns a patent-pending application focusing on the preservation of species and the global environment. (R. at 95). On August 18, 2024, the Chief Executive Officer for Earthsnap, Ralls, also filed a Voluntary Petition for Bankruptcy. (R. at 103). EarthSnap and Ralls subsequently requested that their bankruptcies be jointly administered. (R. at 103). Debtors' first motion requesting joint administration was denied due to certain deficiencies, but the bankruptcy court later granted an

amended motion.  (R. at 112).  On September 3, 2024, the bankruptcy court granted Debtors'

motion to employ Kevin Wiley, Sr. ("Wiley"), of the Wiley Law Group, PLLC, as counsel for

the Debtors.  (R. at 003).

During the pendency of this case, Debtors and Wiley committed a series of significant

mistakes.  Although the court does not wish to detail each and every failing of Debtors and their

former counsel, there are three that are of particular import to the pending appeal.  First, Wiley

consistently failed to file the monthly operating reports in a timely manner as required by Rule

2015 of the Federal Rules of Bankruptcy Procedure.  Second, Wiley did not file a plan for

reorganization until approximately seven months after the case was initiated, which was four

months after the statutory 90-day deadline.[1]  Additionally, it is undisputed that the plan that was

eventually filed by Debtors on January 16, 2025, likely did not meet the confirmation

requirements of 11 U.S.C. § 1129.  Third, Debtors and Wiley failed to comply with two of the

bankruptcy court's discovery orders. Thus, on February 13, 2025, the bankruptcy court entered

an Order to Show Cause Why Case Should Not be Dismissed or Converted for Cause Under

§ 1112.  (R. at 434).

Shortly after the entry of the show cause order, Appellees PlantSnap, Inc., and DEJ

Partners, LLC (collectively "Appellees") filed a Joint Motion to Covert Chapter 11 Cases.  In

their motion, Appellees asked the bankruptcy court to convert Debtors' petitions for bankruptcy

from Chapter 11 reorganizations to Chapter 7 liquidations.  Debtors did not file a response or any

objections to Appellees' motion to convert.  The bankruptcy court set a hearing on the show cause

---

[1] Wiley sought a continuance of the deadline to file a plan for reorganization.  Nevertheless, the extensive nature of Wiley's delay remains significant.

order and Appellees' motion to convert for March 19, 2025.  Despite their failure to respond to Appellees' motion, on March 14, 2025, Debtors filed an Emergency Motion for Continuance of Hearing to allow for the substitution of counsel.  According to Debtors' motion, Wiley had resigned the previous day based on "personal issues that had affected his representation of the Debtors and the Debtors' ability to effectively prosecute their chapter 11 cases."  (R. at 2310). Debtors maintain that Wiley suffered two tragic incidents during the pendency of the case, including his own hospitalization and the passing of his adult son, which led to his purportedly inadequate representation.

On March 14, 2025, the bankruptcy court denied Debtors' motion, stating that "No effort in the emergency continuance request is made to address the matters of concern to the Court as set forth in its show cause order, nor the additional matters raised in the joint conversion motion. The Court's concerns stand, as does the importance of the integrity and transparency of the progress and conduct of these cases."  (R. at 2321).  The bankruptcy court noted that it had already delayed ruling on the pending motion to convert, despite being unopposed by Debtors' counsel.  Additionally, the hearing on the unopposed motion was held, at least in part, to give Debtors' counsel an opportunity to raise the objections it failed to raise in a written response to the motion.  Accordingly, the bankruptcy court conducted a hearing on the show cause order and the motion to convert on March 19, 2025.  The hearing continued into a second day, which took place on March 25, 2026.[2]

---

[2] The record on appeal does not contain the transcript of the March 19, 2025 hearing.  Rather, Debtors designate and provide the transcript only for the second day of the hearing on March 25, 2026. Accordingly, the court has been unable to determine from the record what exactly occurred during the hearing on March 19, 2025.

On April 21, 2025, the bankruptcy court issued an Order Granting Motion to Convert Subchapter V, Chapter 11 Cases Into Chapter 7 Bankruptcy Cases. (R. at 3337). In identifying the grounds for conversion under § 1112 of the Bankruptcy Code, the bankruptcy court cites:

(1)    Debtors' unexcused failure to file timely monthly operating reports and § 1116 financial documents;

(2)    Ralls's gross mismanagement of the bankruptcy estate;

(3)    Debtors' failure to comply with court discovery orders; and

(4)    Debtors' failure to file a proposed Chapter 11 plan that meets the requirements for confirmation.

Additionally, the bankruptcy court found that Debtors failed to meet their burden of establishing the applicability of the exception contained in § 1112(b)(2). Specifically, the bankruptcy court held that Debtors failed to demonstrate the existence of unusual circumstances, stating that the court

> is sympathetic to Debtors' counsel's challenges. Yet, Debtors' reporting failures date from the very beginning of these cases. Debtors['] other failures were not cured prior to the hearing despite ample time to do so. Debtors' plan proposed prior to the hearing does not meet the requirements for confirmation, even after Debtors were permitted an extension of time in which to file a plan. These are not unique failures, and it is far from clear that creditors' outcome would be any better were these cases to continue under Chapter 11.

Thus, the bankruptcy court ultimately concluded that conversion was appropriate and in the best interest of the creditors under § 1112.

On May 5, 2025, Debtors filed a Motion for Reconsideration Regarding Order Converting Cases to Chapter 7, which was denied on June 10, 2025. (R. at 3357, 3748). Thereafter, Appellants filed a Notice of Appeal (#1) on June 25, 2025, asking this court to reverse the rulings contained in the bankruptcy court's Order Granting Motion to Convert Subchapter V, Chapter 11

Cases into Chapter 7 Bankruptcy Cases and the Order Denying Motion to Vacate Order Dismissing Case.

II.     Analysis

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" and, with leave of the court, "other interlocutory orders and decrees" of bankruptcy judges.  28 U.S.C. § 158(a).  Pursuant to 28 U.S.C. § 158(c)(2), an appeal from the bankruptcy court to the district court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts."  *Id.*  Therefore, "when reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court."  *First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103-04 (5th Cir. 1992)); *see In re Fieldwood Energy L.L.C.*, 93 F.4th 817, 819 (5th Cir. 2024); *Lowe v. Gammon (In re Champion Print. & Copying, L.L.C.)*, No. 21-51234, 2023 WL 179851, at *3 (5th Cir. Jan. 13, 2023).

When reviewing a decision of the bankruptcy court, the court must accept the bankruptcy court's findings of fact unless clearly erroneous and examine the bankruptcy court's conclusions of law *de novo*.  *Okorie v. Lentz (In re Okorie)*, No. 24-60377, 2025 WL 603890, at *3 (5th Cir. Feb. 25, 2025); *In re J.C. Penny Dir. Mktg. Servs., L.L.C.*, 50 F.4th 532, 533-34 (5th Cir. 2022); *Galaz v. Galaz (In re Galaz)*, 850 F.3d 800, 804 (5th Cir. 2017); *Monge v. Rojas (In re Monge)*, 826 F.3d 250, 254 (5th Cir. 2016).  Mixed questions of law and fact are reviewed *de novo*.  *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d at 294; *Tech. Lending Partners, LLC v. San Patricio Cnty. Cmty. Action Agency (In re San Patricio Cnty. Cmty. Action Agency)*, 575 F.3d

553, 557 (5th Cir. 2009).  Additionally, "[w]hen a finding of fact is premised on an improper legal standard, or a proper one improperly applied . . . that finding is reviewed *de novo*." *Sylvester v. Chaffe McCall, L.L.P. (In re Sylvester)*, No. 23-30003, 2023 WL 5814882, at *2 (5th Cir. Sept. 8, 2023); *Stone v. Viegelahn (In re Stone)*, 814 F. App'x 857, 858 (5th Cir. 2020).

The court may affirm the bankruptcy court on any grounds raised below and supported by the record.  *See Edwards v. Mesquite Indep. Sch. Dist.*, No. 20-10158, 2021 WL 3716637, at *2 (5th Cir. Aug. 20, 2021) ("[W]e may affirm on any grounds raised in the district court below and supported by the record, even if not relied upon by the district court."); *Harris County v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015) (applying the rule to a district court's Rule12(b)(6) dismissal or grant of summary judgment); *LLEH, Inc. v. Wichita Cnty.*, 289 F.3d 358, 364 (5th Cir. 2002) (applying the rule to a bench trial); *accord Underwood v. Ocwen Loan Serv.*, 829 F. App'x 678, 680 (5th Cir. 2020); *Lauren C. by & through Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 374 (5th Cir. 2018).  Hence, this court is free to consider other grounds upon which the bankruptcy court's decision could be affirmed.  *S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 302-03 (5th Cir. 2007) (citing *Harris v. United States*, No. 01-20543, 2002 WL 760887, at *1 (5th Cir. Apr. 17, 2002)).

A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed. *Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 395 (5th Cir. 2018) (quoting *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003)); *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d at 293-94 (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).  "Where there are two permissible views of the evidence, the factfinder's choice

between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574; *Porretto v. Williams (In re Porretto)*, 761 F. App'x 437, 444 (5th Cir. 2019); *Viegelahn v. Lopez (In re Lopez)*, 897 F.3d 663, 672 (5th Cir. 2018).  The clearly erroneous standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently."  *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d at 293 (citing *Anderson*, 470 U.S. at 573-74).  "An order by a bankruptcy court to convert a Chapter 11 reorganization to a Chapter 7 liquidation is reviewed for abuse of discretion.  *In re Cantu*, 398 F. App'x 76, 77 (5th Cir. 2010); *see In re Coeptis Equity Fund LLC*, No. 23-60002, 2024 WL 1155450, at *1 (9th Cir. Mar. 18, 2024).  Here, the court is of the opinion that the bankruptcy court did not abuse its discretion in converting this case from a Chapter 11 to a Chapter 7 proceeding.

A.    Order on Motion to Convert Under § 1112(b)

Section 1112(b)(1) of Title 11 of the United States Code states:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).  Section 1112(b)(2), however, provides an exception whereby dismissal or conversion may be avoided, provided certain criteria are met.  Specifically, § 1112(b)(2) provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of the creditors and the estate, and the debtor or any other party in interest establishes that -

7

> (A)    there is a reasonable likelihood that a plan will be confirmed within
>         . . . a reasonable period of time; and
>
> (B)    the grounds for converting or dismissing the case include an act or
>         omission of the debtor other than under paragraph (4)(A) -
>
>        (i)     for which there exists a reasonable justification for the act or
>                omission; and
>
>        (ii)    that will be cured within a reasonable period of time fixed
>                by the court.

*Id.* at § 1112(b)(2).

In the present case, it is undisputed that the bankruptcy court correctly determined that the requirements of § 1112(b)(1) were met.  Rather, the central dispute focuses on whether Debtors met their burden of demonstrating the applicability of the exception contained in § 1112(b)(2). Accordingly, the court must determine whether the bankruptcy court erred in refusing to apply § 1112(b)(2).

As a preliminary matter, Debtors must identify and prove the existence of any unusual circumstances establishing that dismissal or conversion would not be in the best interest of the creditors or the estate.  11 U.S.C. § 1112(b)(2).  The Bankruptcy Code does not define what constitutes "unusual circumstances." *In re Los Trece Tex., LLC*, No. 24-10768-smr, 2025 WL 2793109, at *8 (Bankr. W.D. Tex. Sept. 30, 2025); *In re Corley Nissan, LLC*, 656 B.R. 856, 867 (Bankr. D.N.M. 2024).    Courts, however, have recognized that the phrase, as used in § 1112(b)(2), contemplates "conditions that are not common in chapter 11 cases." *In re Baroni*, 36 F.4th 958, 968 (9th Cir. 2022); *In re Los Trece Tex., LLC*, 2025 WL 2793109, at *8; *In re Delta AG Grp., LLC*, 596 B.R. 186, 197 (Bankr. W.D. La. 2019).  "On the other hand, when a debtor's circumstances are encountered by the typical debtor operating in a Chapter 11 proceeding,

then unusual circumstances are not present." *In re Los Trece Tex., LLC*, 2025 WL 2793109, at *8.

In their brief, Debtors expend a significant amount of effort detailing the numerous failings of their former counsel, Wiley, and maintain that his egregious errors constitute "unusual circumstances" for purposes of § 1112(b)(2).[3]  As discussed above, Wiley's mistakes include his failure to file required monthly operating reports on a timely basis, his failure to file a plan of reorganization within the statutory deadline, and his non-compliance with two separate discovery orders.  Regarding the monthly operating reports, the present case was filed on June 17, 2024.  Hence, the first monthly operating report was due in July 2024.  Wiley did not, however, file the first monthly operating report until four months later on October 8, 2024.  Furthermore, a plan for reorganization was not filed until approximately seven months after the initial filing of the case, approximately four months after the statutory 90-day deadline.  Moreover, Wiley did not file any response to the motion to convert, rendering it technically unopposed.[4]  According to Appellants' new counsel,

> All of these deficiencies caused by Former Counsel would be unusual in isolation. But collectively, they clearly constitute the kind of 'unusual circumstances' contemplated by 11 U.S.C. § 1112(b)(2).  A Chapter 11 debtors' counsel's failures from the beginning of the filing of a case to handle basic administrative requirements is, indeed, unusual.  The [bankruptcy] court abused its discretion in failing to so find.

The court, however, disagrees.

---

[3] The court does not list each and every mistake identified by Debtors' new counsel, as doing so would be inefficient.  Accordingly, the court addresses only those mistakes it deems sufficiently egregious to warrant discussion.

[4] The bankruptcy court did not treat the motion as unopposed and conducted a full hearing on the merits, wherein Appellants were given the opportunity to present evidence and testimony in opposition to the motion.

In the present case, Debtors unequivocally fail to identify any unusual circumstances or demonstrate how the alleged circumstances establish that conversion is not in the best interest of the creditors or the estate. 11. U.S.C. § 1112(b)(2). First, the unusual circumstances analysis "does not focus on unusual circumstances of a debtor's life; it focuses on unusual circumstances that make it not in the best interest of the creditors or estate." *In re Assadi*, No. 1:20-CV-998-LY, 2021 WL 917489, at *4 (W.D. Tex. Mar. 9, 2021); *see In re Baroni*, 36 F.4th 958, 969 (9th Cir. 2022). Here, the only "unusual circumstances" Debtors identify are the negligence and mistakes of Wiley, the attorney whom they freely hired and continued to employ throughout a majority of the pendency of this case.[5] As a preliminary matter, the court questions the validity of Debtors' contention that an attorney's negligence or mismanagement of the case, even when it is severe, constitutes an unusual circumstance for purposes of § 1112(b)(2).[6] Moreover, the circumstances identified by Debtors seemingly focus on why it would be unfair or inequitable to Debtors to dismiss or convert the present case. Inequity to Debtors, however, is not the relevant inquiry.[7] *In re Assadi*, 2021 WL 917489, at *4. Therefore, Debtors have failed to demonstrate the existence of unusual circumstances.

---

[5] A litigant is "accountable for the acts and omissions of their attorneys." *Cruz v. Cervantez*, 96 F.4th 806, 812 n.5 (5th Cir. 2024) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993)).

[6] The mismanagement of a case by an attorney, while unfortunate, is not that unusual. Additionally, Debtors do not cite a single case wherein a court has found that attorney misconduct constitutes an unusual circumstance for purposes § 1112(b)(2).

[7] The court also notes that the bankruptcy court's decision to convert the present case does not seem inequitable in light of the fact that Debtors freely selected and continued to retain their former counsel despite numerous missteps.

Second, Debtors fail to explain how the alleged unusual circumstances demonstrate that conversion is not in the best interest of the creditors or the estate. Rather, counsel for Debtors discuss only the existence of unusual circumstances. Debtors do not identify any benefit to the creditors in the event the case is not converted or provide even a conclusory explanation as to why conversion is not appropriate in the case at bar.[8] Therefore, Debtors have failed to demonstrate the existence of unusual circumstances or establish that any such circumstances suggest that conversion is not in the best interest of the creditors or the estate.

In light of the above finding, the court need not delve further into an analysis under § 1112(b)(2). It is worth noting, however, that, even if Debtors could demonstrate the existence of unusual circumstances, they cannot establish a reasonable justification for the acts or omissions forming the grounds for conversion as required by § 1112(b)(2)(B)(i). 11 U.S.C. § 1112(b)(2)(B)(i). In granting Appellees' Motion to Convert, the bankruptcy court held that cause for conversion existed based on Debtors' unexcused failure to file timely monthly operating reports, gross mismanagement of the estate, failure to present a confirmable plan, and failure to comply with court orders. Debtors, however, assert that a reasonable justification exists for the acts or omissions forming the grounds for conversion—namely, the hardships Wiley faced in being hospitalized and losing his adult son during the pendency of this case. Although the court is

---

[8] In a section of their brief discussing the likelihood of confirmation, Debtors mention in passing that the amended plan for reorganization filed by Debtors' new counsel will result in all of the creditors being paid in full. In some cases, the ability of creditors to be repaid in full has been identified as an unusual circumstance for purposes of § 1112(b)(2)(B). *In re Korn*, 523 B.R. 453, 469 (Bankr. E.D. Pa. 2014) (holding that unusual circumstances exist when there is a convincing prospect that creditors will be paid in full without the risks of failure typically associated with the implementation of a Chapter 11 plan). Nevertheless, Debtors do not develop or substantiate this contention. Additionally, as discussed below, the bankruptcy court's holding should also be affirmed due to Debtors' inability to provide a reasonable justification for the acts or omissions forming the grounds for converting the case. Accordingly, the court need not discuss this issue further.

sympathetic to the significant difficulties experienced by Wiley, many of the acts and omissions identified by the bankruptcy court cannot, in any way, be attributed to the personal tragedies suffered by Debtors' former counsel.

First, many of the acts or omissions identified by the bankruptcy court arose before Wiley suffered any hardships. According to Debtors' motion to reconsider, Wiley was hospitalized for an extended period of time in November or December 2024. Additionally, Wiley experienced the unexpected death of his adult son in January 2025. Although the court acknowledges the hardships Wiley suffered during the pendency of Debtors' bankruptcy petition, this case was initially filed on June 17, 2024. The failures identified by the bankruptcy court began as early as July 2024, approximately four months before Wiley's hospitalization. Specifically, in July, August, and September 2024, Wiley did not file the required monthly operating reports. Additionally, Wiley failed to comply with two separate court orders requiring Rule 2004 examinations of EarthSnap that were entered on September 17, 2024, and October 25, 2024, respectively. Consequently, many of the instances of misconduct that form the grounds for conversion cannot be attributed to or reasonably justified by Wiley's personal circumstances, which did not arise until months later.

Second, one of the most significant grounds for conversion, Ralls's gross mismanagement of the estate, cannot be attributed to Wiley. In analyzing the mismanagement of the estate, the bankruptcy court noted:

> Debtor, Eric Ralls, filed his bankruptcy case on August 18, 2025, three days after forming GreenMind, LLC. On August 19, 2025, GreenMind, LLC opened a new bank account. The first deposit into that account was from Debtor, Earthsnap, Inc., with similar subsequent wire transfer deposits . . . . Purchases in the following months [from GreenMind's account] while these bankruptcy cases were pending include Spotify, 1-800-PETMEDS, Southwest Airlines, Geico Auto, Hulu, Uber, Doordash, Instacart, Cigna, Mosquito Joe, Clear, and Publix. These merchants, with the possible exception of Amazon.com, have little to do with the

> business of Debtor, Earthsnap.com, and instead appear personal to Mr. Ralls. Yet the statements from this account admitted into evidence do not clearly reflect any deposits from Mr. Ralls . . . . It appears the creation of GreenMind, LLC and the use of its new bank account in this way is specifically designed to avoid compliance with Chapter 11 reporting requirements.

Accordingly, the court cannot conclude that Wiley's personal tragedies reasonably justify the mismanagement and misappropriation of funds perpetrated by Ralls. Therefore, even if unusual circumstances did exist, the bankruptcy court did not err in refusing to apply § 1112(b)(2), as Debtors cannot provide a reasonable justification for the acts and omissions that formed the grounds for conversion.

Based on the foregoing analysis, the bankruptcy court did not abuse its discretion in holding that Debtors failed to meet their burden under § 1112(b)(2). As a result, the court need not address Appellants' contentions regarding the remaining requirements of § 1112(b)(2). Therefore, because the exception contained in § 1112(b)(2) does not apply, the bankruptcy court correctly concluded that conversion was appropriate under § 1112(b)(1).

B.    Order on Motion for Reconsideration of the Order Converting the Case

Debtors also appeal the bankruptcy court's order denying their motion to reconsider. In their brief, however, Debtors do not advance any arguments separate and apart from those they advance with respect to the bankruptcy court's initial order converting the case. Thus, for the same reasons discussed above, the bankruptcy court did not err in denying Debtors' motion for reconsideration of the order converting the case.

III.    Conclusion

Accordingly, the bankruptcy court's Order Granting Motion to Convert Subchapter V, Chapter 11 Cases into Chapter 7 Bankruptcy Cases and its Order Denying Motion to Reconsider are AFFIRMED.

SIGNED at Beaumont, Texas, this 7th day of July, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE